**In re DEINSTITUTIONALIZATION of STATUS OFFENDERS, Separation of Detained Juveniles from Adults in Jails and Lockups, and Removal of Children in Need of Services, Status Offenders, and Juvenile Delinquents from Adult Jails.**

No. 95S00–8903–MI–242.

Supreme Court of Indiana.

March 23, 1989.

As Amended April 26, 1989.

### ORDER

WHEREAS, the State of Indiana has through its Legislative and Executive Branches committed itself to the deinstitutionalization of status offenders, the separation of detained juveniles from adults in jails and lock-ups, and the removal of children in need of services, status offenders, and juvenile delinquents from adult jails, through legislation and through agreements between the Executive of the State of Indiana and the federal Office of Juvenile Justice and Delinquency Prevention; and the State has for over ten years accepted funds from the Office of Juvenile Justice and Delinquency Prevention conditioned upon the State of Indiana deinstitutionalizing status offenders, separating juveniles from adults in secure facilities, and removing of children in need of services, status offenders, and juvenile delinquents from adult jails;

WHEREAS, monitoring reports of the Criminal Justice Institute show that numerous instances of the jailing of juveniles in violation of the laws of the State of Indiana and the mandates of the Juvenile Justice and Delinquency Prevention Act of 1974, as amended, are presently occurring, the State of Indiana was required to submit a three-year plan for the achievement of compliance with the Juvenile Justice and Delinquency Prevention Act, which had to include a mechanism for enforcement of the Act and the laws of this State; and

WHEREAS, an integral part of said Plan is the provision of counsel to challenge detentions of juveniles in violation of Indiana law, and whereas the State Advisory Group to the Office of Juvenile Justice and Delinquency Prevention has recommended that the most efficient and effective method of providing counsel for illegally detained children is through the Office of the Public Defender of the State of Indiana;

IT IS THEREFORE ORDERED that the Public Defender of the State of Indiana is granted authority (1) to seek federal funding through the Office of Juvenile Justice and Delinquency Prevention and the Indiana Criminal Justice Institute to provide representation to juveniles detained in secure facilities in violation of state law and (2) to use such funds to provide legal representation to juveniles detained in violation of state law in such cases as the State Public Defender deems appropriate, in *habeas corpus* or other actions, including appeals or original actions, in the courts of the State of Indiana, for the purpose of securing the release of such children from confinement in violation of law. This authority shall not extend to any action seeking damages nor to any action in federal court. The Public Defender of Indiana's authority shall be limited to efforts to secure release from secure facilities in violation of law and the Public Defender of Indiana shall not provide further representation in delinquency actions or actions involving children in need of services unless appointed by the court under Ind.Code § 33–9–11–1 et seq. This authority shall extend only as long as the time provided in the first year's grant or until such later time as the Court may order.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, Justice, dissenting.

I object to this Court entering an order authorizing the State Public Defender to intervene in local juvenile matters in a very limited and restrictive manner. The lending by this Court of its power to intervene

in this very limited manner will do nothing to aid local juvenile judges and the other areas of county government to face its responsibilities in this very difficult and complex problem. Rather, it will frustrate it. This Order includes not only status offenders and children in need of services; it includes juvenile delinquents who have been apprehended and are before the juvenile court because of their involvement in a whole range of violations and illegal acts that include the most violent ones. The purpose of the juvenile system is to attempt to reach children under eighteen (18) and, by special handling and direction, turn them from the path they have taken before they enter the system as adult criminals. It should be noted the juvenile system is responsible for turning many of these young people in the right direction and helping them become useful citizens in our society. Unfortunately, it is not true of all of them. This brings up the other duty and responsibility of a juvenile judge and that is to protect society from the violence that is just as real when coming from a fifteen year-old as it is from a thirty-five year-old. The point is that these judges and their probation staff, with the aid of all other agencies in the county, must try to see the difference and do what is humanly possible to recognize all of these responsibilities and come up with an answer. There are many serious, difficult decisions which must be made day-to-day by these juvenile judges in determining what course to take in each case. Temporary detention of the juvenile is just one of these decisions. The responsibility for providing proper and acceptable detention is shared with the judge by the county council, who must look at this financial need as well as all other needs of the county. All of these people want to do the right thing but not all of them have the funds to provide facilities which would meet federal standards as expressed in the reports filed with us requesting this order. Most counties cannot afford to build an institution costing hundreds of thousands, or perhaps millions, of dollars to be used by a very small percentage of the juveniles in the county. This is a project more properly addressed by the executive and legislative branches than by the judiciary. These reports, and the order this Court proposes to issue, suggest the legislative and executive branches have been concerned with meeting the problem of *providing* the necessary detention facilities in all areas of the State, whether they be in-county or regional. These facilities have not yet been provided. In the meantime, the day-to-day problems of handling juvenile matters in the society of the local counties goes on. I think it is a mistake for the Indiana Supreme Court to order its Public Defender to go into the local communities with a single mission. That mission is to do nothing more than go into the counties, order that juveniles detained there, for whatever reason, be put back on the streets, and then leave town. It would do nothing to aid local courts and county councils, probation departments, and social service agencies in the handling of all of the other problems involved with the total program. I am not suggesting this Court is not concerned with the illegal detention of juveniles or anyone else in this State. I am suggesting we do not have sufficient showing to distrust the good judgment of the local juvenile judges and other county agencies to justify our interference in this very limited manner.

I cannot endorse the proposed order, and dissent to its entry.